IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETSOCKET, INC., <br><br> Plaintiff, <br><br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Defendant. | Case No. 2:22-cv-00172-JRG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF NETSOCKET, INC.'S OPPOSED MOTION TO COMPEL DISCOVERY**

I.     **INTRODUCTION**

Cisco has stonewalled Netsocket's discovery efforts to uncover the full extent of Cisco's infringement. Netsocket requests the Court to compel Cisco to: (1) identify and produce portions of the source code related to Quality of Service (QoS) functionality/technologies used in Cisco SD-WAN, Viptela SD-WAN, Cisco Meraki, StarOS, Cisco ACI/APIC, and Cisco DNA ("Cisco Source Code"); and (2) identify which Cisco products or systems use this code per Interrogatory No. 6.

This case is about Quality of Service or "QoS" functionality/technologies – the subject of the claimed inventions of the patents-in-suit. *See, e.g.,* Dkt. 1-1 at p. 13, col. 10, ll. 18-19 ("A method for providing end-to-end Quality of Service (QoS) within a mobile telecommunication system.").[1] QoS is a set of technologies in a computer network used to guarantee its ability to dependably run high-priority applications and traffic (e.g., online gaming, streaming media, video conferencing, video on demand, and Voice over IP) in networks that have limited capacity for data.[2] QoS can be used to assign the order in which packets are handled and the amount of bandwidth afforded to an application or traffic flow.

At the heart of the case is Cisco source code. Because this code is *not* publicly available, Netsocket's complaint focused on QoS *functionality* – wherever that may be. Netsocket then sets forth *examples* of how Cisco implements the claimed QoS functionality. Netsocket's contentions further expand on these examples. But Netsocket does not, and cannot, know all of Cisco's sourcecode internally used to implement the infringing QoS functionality or even what specific

---

[1] *See also* Ex. V at 9:15-17 ("means for sending IP packets requiring a predetermined QoS to the destination terminal"); Dkt. 1-2 at p. 8, col. 6, ll. 5-8 ("This invention makes it possible to deploy bandwidth guaranteed end-to-end VLL services across the two of the most commonly used QoS models.");Ex. W at 11:14-17 ("[E]nd-to-end QoS is provided . . . .").
[2] *See* Ex. A; *see also generally* Ex. B.

1

hardware uses that code. That is the purpose of discovery.

So Netsocket served discovery requesting (1) Cisco to identify Cisco code that implements QoS functionalities and the products using this code, and (2) produce code and documents. Cisco refused to do so. Instead, Cisco gave Netsocket an impossible task – demanding that Netsocket identify the Cisco source code/products that implement QoS functionalities. But Cisco is the only one who knows the answer to this. With the parties in a discovery loop, Netsocket identified the code that it believed implemented infringing QoS functionalities, including Cisco Source Code.

Cisco, however, refused to produce the Cisco Source Code and continues to resist all efforts to identify relevant QoS code and the products using that code. Without discovery, there is no way for Netsocket to identify all of Cisco's infringement. Thus, Netsocket requests the Court's assistance to obtain Cisco Source Code and identify all Cisco products that use that code.

## II.    BACKGROUND

On May 24, 2022, Netsocket filed a complaint for patent infringement of U.S. Patent Nos. 7,616,601 and 7,190,698. Dkt. 1. On August 19, 2022, Netsocket filed a First Amended Complaint. Dkt. 16. On September 8, 2022, Netsocket served preliminary infringement contentions for the '601 and '698 patents. Ex. C.

On October 14, 2022, the Court entered a Discovery Order that required Cisco (without request from Netsocket) to produce source code and documents relevant to the case. Dkt. 33.

On January 11, 2023, Netsocket filed a Second Amended Complaint in which it alleged infringement of five additional patents. Dkt. 43. Specifically, Netsocket identified Cisco's QoS functionality as the infringing functionality that is "within" or "as part of" certain exemplary

source code/products. Dkt. 43 at ¶¶ 33, 99, 65, 66, 82, 83 117, 118.[3]

Netsocket also served supplemental preliminary contentions detailing, for the five new patents, how Cisco's QoS functionality infringes based on *examples* in the complaint. Exs. D–H.

Notably, by the time Netsocket served its supplemental contentions, *Cisco had still not produced any code or internal Cisco documents* as required under the Discovery Order.[4] On April 12, 2023, after Cisco failed to provide any discovery in the case, Netsocket sent Cisco a letter requesting documents and source code related to products identified in the contentions as well as "related to Quality of Service (QoS) and/or reserving resources within a network." Ex. I at 3, 8, 13. Cisco refused to do so. Instead, Cisco continuously requested that Netsocket, without any discovery from Cisco, identify all Cisco products that infringe. But only Cisco knows which source code implements QoS functionality and which products use that code.

On June 16, 2023, Netsocket served Interrogatory No. 6. Netsocket specifically requested that Cisco identify all of its code that implements QoS functionalities (including network resource management, reserving network resources/resource reservation, and/or admission control) and the Cisco products/systems using this code. Ex. J at 8. On July 17, 2023, Cisco served its objections and responses to Interrogatory No. 6. But Cisco only agreed to provide responsive documents with regard to the specific examples of products/systems set forth in the infringement contention—nothing more. Ex. K at 6, 22-23.

Netsocket immediately informed Cisco that its response was deficient and requested a meet-and-confer. Ex. L. Then, on July 24, 2023, in advance of the meet-and-confer, to avoid a

---

[3] Netsocket also identified Cisco Unified Communication in conjunction with Cisco 2900 and 3900 series routers. *See id.* at ¶¶ 131, 132. Netsocket specifically discussed QoS functionality, e.g., bandwidth manager, resource reservation, admission control. *Id.* at pp. 61, 63, 64, 65, 66.
[4] Unless otherwise noted herein, all emphasis is added.

3

further dispute and delay, NetSocket's counsel sent an email to Cisco attempting to identify specific code that Netsocket believed implements Cisco's QoS functionality, including the Cisco Source Code. *See generally* Ex. M.

On August 10 and 11, 2023, as ordered by the Court, the parties met and conferred regarding the production of Cisco source code. At that time, Cisco agreed to produce certain source code but would not commit as to whether it would produce the Cisco Source Code.

On September 7, 2023, after Cisco's continued failure to commit to producing the Cisco Source Code, Netsocket's counsel sent an email seeking Cisco's final position on the Cisco Source Code. Ex. N. On September 15, 2023, Cisco's counsel responded with a letter stating that Cisco would not produce the Cisco Source Code. Ex. O. Cisco's position was that none of the Cisco Source Code could be considered as "Accused Products" in this case due to an alleged lack of infringement contentions specifically discussing this code. *Id.* at 1. But Cisco is wrong.

### III.     ARGUMENT

#### A.     Cisco's own discovery delay should not limit Netsocket's case.

Cisco improperly seeks to use its own discovery delay tactics to limit discovery. Cisco should not be permitted to do so. Notably, despite the Discovery Order being entered over a year ago, Cisco first made certain source code available in October 2023 and has only produced an anemic 4,346 documents (nearly all public documents) (including prior art).

This case is about QoS functionality/technologies, which is implemented in Cisco's *proprietary* source code. In January 2023, Netsocket filed an amended complaint and served supplemental preliminary contentions. Because the code is not publicly available, Netsocket's complaint and contentions focused on Cisco's QoS functionality and provided *examples* of infringing implementations of that functionality, including in Cisco IOS.

4

Notably, when Netsocket prepared its contentions, Cisco had *not* produced any internal documents or source code. Thus, Netsocket prepared its preliminary contentions without the benefit of any information from Cisco. As discussed below, Cisco now seeks to use this against Netsocket.

Starting in early 2023, Cisco demanded that Netsocket identify all infringing products. Netsocket explained that, given the nature of infringement, it cannot do so until it has discovery related to Cisco QoS source code and the products that implement that code. Only Cisco has this information. Netsocket sent an interrogatory and a letter requesting that Cisco identify and produce source code and documents related to Cisco's QoS functionality. *See generally* Ex. J; *see also* Ex. I. Cisco refused. With the parties in a perpetual loop, to avoid a dispute, in July 2023, Netsocket informed Cisco that it believed that Cisco SD-WAN, Viptela SD-WAN, Cisco Meraki, StarOS, Cisco ACI/APIC, and Cisco DNA implement infringing QoS functionality. *See* Ex. M.

Cisco, however, balked at providing this code or identifying products that use this code. Months later, in September 2023, Cisco informed Netsocket that it would not produce any discovery related to QoS functionality other than the specific *examples* in Netsocket's preliminary contentions—contentions that were limited in scope in the first place due to Cisco's failure to provide mandatory discovery. Cisco should not be able to use its refusal to timely produce discovery, which affected Netsocket's contentions, to now limit Netsocket's case.

### B.     The Cisco Source Code is implicated.

At bottom, Cisco's position is that any Cisco code that is not specifically called out *by name* in the infringement contentions are not part of the case. But, in doing so, Cisco ignores the reality of cases involving infringement by *proprietary, non-public* source code.

Here, Cisco has many types of source code and hundreds of products using that code. Only Cisco knows the exact operation of the code and the identity of the products using that code. It is

5

because of this that Netsocket accused a *functionality*—QoS functionality—wherever that functionality may exist in Cisco code/products. Netsocket then provided *examples* of how the infringing QoS functionalities are used in various Cisco products.

Here, the complaint makes it clear that this case is about Cisco's QoS functionality "within" or "as part of" certain source code/products.

> Cisco has and continues to infringe . . . <u>at least</u> by making, using, offering to sell, importing, and/or selling by **end-to-end Quality of Service (QoS)** <u>within</u> a mobile telecommunication system. <u>For example</u>, . . . Cisco manufactures, imports, sells and offers to sell a Multiprocessor WAN Application Module (MWAM) and Catalyst 6500 and 7600 Series routing platforms . . . ."

Dkt. 43 at ¶¶33, 99.

> Cisco has and continues to infringe . . . <u>at least</u> by making, using, offering to sell, importing, and/or selling **end-to-end Quality of Service (QoS)** <u>as part of its</u> Internetwork Operating System (IOS) versions 12 and above. <u>For example</u>, . . . Cisco manufactures, imports, sells and offers to sell the Cisco Internetworking Operating System (IOS) . . . ."

*See id.* at ¶¶ 65, 66; *see also id.* ¶¶82, 83 117, 118.

The complaint accuses exemplary software (Cisco IOS) as well as "all like products" as infringing and refers to these as the "Accused Products." *Id.* at ¶ 30. Further, the complaint continuously refers to the infringing systems as the "Cisco ***QoS*** system" *See* Dkt. 43 at ¶¶ 34-36, 60, 84, 85, 94, 100-102, 119, 120, 126.

Similarly, the infringement contentions focus on QoS functionality as the infringing instrumentality that is "within" or "configured on" various systems.

> **The Cisco Quality of Service (QoS) System provides** for controlling resources <u>within</u> a data network implemented by a first network level . . . and at least a second network level . . . , each network level providing connectivity over at least one network domain <u>within</u> a Multi-Protocol Label Switch (MPLS) Virtual Private Network (VPN) Inter-Autonomous System (AS) system.

Ex. E at 1.

> The ***Cisco Quality of Service (QoS) provides*** for reserving resources <u>within</u> an IP network to obtain a predetermined QoS . . . <u>within</u> a Multi-Protocol Label Switch (MPLS) Virtual Private Network (VPN) Inter-Autonomous System (AS) system.

6

Ex. H at 22; *see also* Ex. D at 1 ("Cisco Multi-process WAN Application module . . . with Cisco Catalyst 6500 and 7600 . . . , provides for performing admission control . . . in networks *via* ***Quality of Service (QoS)*** *configured on* the MWAM"). Thus, Netsocket identified QoS functionalities as the infringing instrumentalities in accordance with Local Patent Rule 3-1. The purpose of discovery is to now uncover the specific source code/products implementing these QoS functionalities. Yet, Cisco resists any such discovery.

Indeed, Cisco takes its intransigence to the extreme. For example, with regard to the '284 patent, Netsocket identified QoS used with GGSN (a cellular technology) as infringing. And Cisco agreed to produce GGSN source code. Ex. O at n.1. But Cisco refuses to produce StarOS source code even though Cisco's own documents specifically state that "***GGSN is a StarOS application*** that runs on Cisco ASR 5500 and virtualized platforms." Ex. P at 4. This is inappropriate.

At Cisco's insistence, Netsocket attempted to identify implicated source code based on publicly available Cisco documents. Netsocket identified Cisco/Catalyst SD-WAN, Viptela SD-WAN, Cisco Meraki, StarOS, Cisco ACI/APIC, and Cisco DNA as implementing infringing QoS functionalities. *See* Ex. M; *see also* Ex. Q (identifying infringing products to include Cisco IOS, StarOS, Cisco Merakai, Cisco ACI/APIC, Cisco/Catalyst SD-WAN, and Cisco Viptela).[5] But even with this identification, Cisco continues to stonewall. Cisco should be compelled to identify and produce the Cisco Source Code, and identify which Cisco products or systems use this code.

---

[5] *See also* Ex. R at 8 ("***SD-WAN*** Edge Routers . . . are responsible for traffic forwarding and provide . . . ***Quality of Service (QoS)*** enforcement."); Ex. S at 3("Cisco ACI ***Quality of Service (QoS)*** feature allows you to classify the network traffic in your fabric and then to prioritize and police the traffic flow to help avoid congestion in your network."; "You can create a custom ***QoS policy*** in ***Cisco APIC***); Ex. T at pp. 15-16 ("***Cisco Meraki MS switches*** support LLDP-MED and Cisco Discovery Protocol . . . . The switch must be ***configured to handle QoS*** for the incoming traffic . . . ."); Ex. A at 2 ("You can ***configure QoS*** in your network using application policies in ***Cisco DNA Center***."); Ex. U (Workflow to Configure ***QoS*** Using ***Cisco SD-WAN*** Manager).

Dated: November 14, 2023                    Respectfully submitted,

/s/ Ronald M. Daignault
Zachary H. Ellis* (Texas State Bar No. 24122606)
Ronald M. Daignault* (*pro hac vice*)
Jason S. Charkow* (*pro hac vice*)
Chandran B. Iyer (*pro hac vice*)
Scott R. Samay* (*pro hac vice*)
Oded Burger* (*Admitted to Practice*)
DAIGNAULT IYER LLP
zellis@daignaultiyer.com
rdaignault@daignaultiyer.com
jcharkow@daignaultiyer.com
cbiyer@daignaultiyer.com
ssamay@daignaultiyer.com
oburger@daignaultiyer.com
8618 Westwood Center Drive - Suite 150
Vienna, VA 22182

*\*Not admitted in Virginia*
*Attorneys for Plaintiff NetSocket, Inc.*

8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 14th day of November, 2023, a true and correct copy of the foregoing document was forwarded by electronic mail via CM/ECF to all counsel of record for Defendant Cisco Systems, Inc.

*/s/ Ronald M. Daignault*
Ronald M. Daignault

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel has complied with the meet and confer requirements in Local Rule CV-7(h) and that the motion is opposed. Counsel for Netsocket conferred with counsel for Cisco via web conference on November 13, 2023. Ronald Daignault, Jason Charkow, Oded Burger, and Zachary Ellis participated in the call on behalf of Netsocket. Janice Ta, Sarah Piepmeier, Sarah Hunt, James Miller, and Travis Underwood participated in the call on behalf of Cisco. No agreement could be reached because Cisco will not produce source code for products it believes are not identified or somehow related to NetSocket's infringement contentions. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Ronald M. Daignault*
Ronald M. Daignault

*/s/ Zachary H. Ellis*
Zachary H. Ellis