IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NETSOCKET, INC.,<br><br>   *Plaintiff*,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>   *Defendant.* | NO. 2:22-CV-00172-JRG<br><br>**REDACTED VERSION** |

**CISCO SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF NETSOCKET, INC.'S INFRINGEMENT CONTENTIONS**

## I.     INTRODUCTION

As Cisco's Opening brief explained, NetSocket has accused five different Cisco operating systems that operate a large number of hardware products. Cisco originally developed IOS Classic, but then expanded it into IOS XE to better serve the needs of enterprise customers (e.g., large corporations); IOS XE is thus a related extension of IOS Classic. Cisco developed the unrelated IOS XR for internet service providers (like Comcast); NX-OS for data centers; and UCM to allow customers to make phone calls over the internet. While IOS Classic and XE are similar, the others were developed independently, on different infrastructures and platforms, and for different audiences. This is why providing source code citations (which NetSocket does not deny are required by Section 3(a)(i) of the Court's Discovery Order) for only IOS XR does not meet NetSocket's burden under the Court's rules or the relevant case law to identify its infringement theories for IOS Classic, XE, or NX-OS. IOS XR is an entirely different product.

The problem with NetSocket's source code citations is that it *assumes* that XR is representative of other operating systems that have no relation to XR. It is one thing to show that a specific version of one code base is representative of another version—i.e., IOS XR 7.92 may be representative of IOS XR 7.10.1. But it is a different situation to assume, with no attempt to demonstrate representativeness, that one code base (e.g., XR) is representative of a wholly different code base (e.g., NX-OS).

NetSocket claims to have solved the problem by belatedly providing source code citations to XE and NX-OS. This is false. As explained below, the alleged "pin-point" citations do not come close to identifying "on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements," as required by Discovery Order. Dkt. 33 ¶ 3(a)i. NetSocket next excuses its lack of citations to IOS Classic because, in its view, Cisco produced the wrong version of IOS Classic.

Opp'n at 1.  As explained below, Cisco produced IOS Classic ▇▇▇▇▇ because NetSocket's original and amended *infringement contentions specifically identified that version*.  Indeed, NetSocket did not request IOS Classic ▇▇▇▇▇ until after Cisco filed the instant motion, and then claimed to need ▇ only because it could not allegedly locate the RSVP Agent code.  But Cisco promptly informed NetSocket—*before it filed its Opposition*—that it had produced the RSVP Agent code NetSocket was now requesting last fall.  In other words, NetSocket had the supposedly "missing" RSVP Agent code (as part of IOS XE) for eight months, but did not look for that code until Cisco filed its present motion because it had simply assumed that IOS XR is representative of every IOS product.

II. **NETSOCKET'S SUPPLEMENTAL SOURCE CODE SPREADSHEET DOES NOT REMEDY THE CONTENTIONS' DEFICIENCIES**

After Cisco filed the instant motion, NetSocket provided a spreadsheet with additional source code citations, which it asserts identifies "the code citations by line and module and, further, identified for which claim element the code corresponded." Oppn. at 4.  Setting aside the fact that this spreadsheet does not provide any source code citations for IOS, it still does not identify NX-OS or IOS XE source code on an "element-by-element basis for each asserted claim" as required under the Discovery Order. Dkt. 33 ¶ 3(a)(i); *see also* Dkt. 157-5.  It simply provides a list of source code citations with a "corresponding page" (or pages) to the contentions—but provides no indication as to which claim *element* the citations relate to.  *Id.*  Conversely, NetSocket's amended infringement contentions provide at least *some* indication as to what the cited XR functions are related to.  *Compare* Dkt. 157-6 at 28 ("▇▇▇▇▇▇▇▇▇▇▇ function ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇") *with* Dkt. 157-5 at 4 (IOS XE Function ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and "Corresponding Page in IC" "Page 28").

Moreover, despite NetSocket's claims (*see* Oppn. at 8), the further citations do not demonstrate representativeness between unrelated products (e.g., between XE and XR). As the chart below illustrates, NetSocket's amended '966 patent infringement contentions identify ▮ IOS XR functions, while the May 3, 2024 spreadsheet cites ▮ IOS XE function and ▮ NX OS functions, none of which are the same as any of the originally cited IOS XR functions. *Compare* Dkt. 157-6 at 28-29, 33- 35 *with* Dkt. 157-5 at 4.

[REDACTED CHART]

NetSocket simply lists these citations; it has not even attempted to show that these disparate citations to different code bases are in any way representative of each other.

### III.  CISCO'S COMPREHENSIVE SOURCE CODE PRODUCTIONS AND THE "MISSING" CODE NETSOCKET HAS HAD ALL ALONG

NetSocket asserts that the "only reason" it has not provided citations to IOS Classic is Cisco's alleged failure "to produce the relevant version of the code" because "a key portion of the accused functionality was not introduced ▮," and Cisco produced ▮ ▮. Oppn. at 1. NetSocket never mentions that the "key portion" of code it references is for RSVP Agent, a functionality that NetSocket accuses (of infringing only the '966 patent) in its *April 2024* amended infringement contentions. Although Cisco had not searched specifically for RSVP Agent when preparing its original source code production (as RSVP Agent was not accused

---

[1] Dkt. 157-6 at 18, 33-35.
[2] Dkt. 157-5 at 4.
[3] *Id.*

until NetSocket's April 2024 amended contentions), RSVP Agent code was nevertheless produced over eight months ago in IOS XE ▮▮▮▮. ▮ Cisco produced ▮▮▮▮ eight months ago.[4] Furthermore, NetSocket targets RSVP Agent because it alleges it has the *functionality* of "provid[ing] call admission control (CAC) and quality of service (QoS) … [using] Resource Rservation Protocol (RSVP)." Dkt. 157-6 at 9. But that functionality was included as early as Cisco IOS 12.1(5)T[5] and was therefore included in IOS ▮ also produced more than eight months ago.

Cisco filed the instant motion on April 30, 2024, after a meet and confer on April 25, 2024. Dkt. 143-1 ¶¶ 8-9. The first time NetSocket raised any concern as to the sufficiency of Cisco's IOS source code production was *a week after Cisco's motion*—May 6, 2024—when NetSocket broadly demanded "all software releases of IOS (Classic, XE, XR) and NX-OS listed on Cisco's website," including "for example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Piepmeier Decl., Ex. 2. This new request would include hundreds of releases. Cisco made IOS ▮▮▮▮ (which are prior art, not an accused product, based on NetSocket's supplemental contentions) available the next day. *Id.* During the parties' May 9, 2024 meet and confer, NetSocket did not identify any specific reason why it needed all source code versions, or anything that was missing from Cisco's existing source code productions. *Id.* ¶2.

On May 18, 2024, more than two weeks after Cisco filed this motion, NetSocket finally requested a specific version (instead of *all* of the hundreds of versions listed on Cisco's website)

---

[4] There can be no confusion because, on November 9, 2023, NetSocket asked what code versions Cisco had produced, and that same day, Cisco's counsel explained that it had produced ▮▮▮▮ ▮▮▮▮▮▮ (1) IOS ▮▮; (2) IOS XE ▮▮; (3) IOS XE ▮▮▮; (4) IOS XR ▮▮; (5) IOS XR ▮▮; (6) NX-OS ▮▮; (7) NX-OS ▮▮; and (8) UCM ▮▮. Declaration of Sarah E. Piepmeier in Support of Reply ("Piepmeier Decl."), Ex. 1.
[5] https://www.cisco.com/c/en/us/td/docs/ios/solutions_docs/voip_solutions/CAC.html ▮▮ -wp903809 (last visited May 27, 2024)

-4-

and indicated why it wanted additional code. NetSocket indicated that it needed Cisco IOS because, it argued, that was the first version that included "RSVP Agent," which is a name adopted in later versions of Cisco IOS for the functionality involved in performing call admission control with RSVP. *Id.*, Ex. 5.[6]

Cisco promptly explained to NetSocket that the IOS XE source code Cisco had produced more than six months earlier included the RSVP Agent functionality. *Id.*, Ex. 6. The next day, NetSocket filed its Opposition. NetSocket never told the Court that it had access to the code for the allegedly missing RSVP Agent functionality since at least October 25, 2023 (when NetSocket began reviewing code, including IOS XE containing the RSVP Agent functionality).

## IV.   CONCLUSION

For the foreoing reasons, and as explained in its opening brief, Cisco respectfully requests that the Court grant its Motion to Strike. Further, because NetSocket has had access to the relevant code for more than six months and still did not include source code citations beyond XR and UCM, it should not be permitted a "do over" to incorporate code it could and should have included in its April 2024 supplemental contentions.

Dated: May 29, 2024                                          Respectfully submitted,

/s/ Sarah E. Piepmeier
Sarah E. Piepmeier
Email: SPiepmeier@perkinscoie.com
Elise Edlin
Email: EEdlin@perkinscoie.com

---

[6] On May 3, 2024, NetSocket mentioned "source code" as part of a broad request for additional discovery on "RSVP Agent … as a stand-alone product." Piepmeier Decl, Ex. 3. After Cisco corrected NetSocket's misunderstanding that RSVP Agent has never been a "stand-alone product," NetSocket requested "documents and a witness" related to RSVP Agent and did not mention RSVP Agent source code again until May 16, 2018. *Id.*, Ex. 4 at 5 (correcting misinterpretation that RSVP Agent was ever a stand alone product), *id.* at 4 (requesting "documents and a witness"), *Id.* at 1 (mentioning "source code for the different versions of RSVP Agent").

**Perkins Coie LLP**
505 Howard Street, Suite 1000
San Francisco, CA 94105; Tel: 415-344-7000

Hessam Gharaviram
Email: hgharaviram@perkinscoie.com
**Perkins Coie LLP**
3150 Porter Drive
Palo Alto, CA 94304-1212; Tel: 650-838-4319

James Miller
Email: jmiller@perkinscoie.com
Samantha Hunt
Email: samanthahunt@perkinscoie.com
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101; Tel: 206-359-8584

Janice L. Ta
Email: JTa@perkinscoie.com
**Perkins Coie LLP**
405 Colorado St., Suite 1700
Austin, TX 78701; Tel: 737-256-6100

Nathanael D. Andrews*
Email: nandrews@perkinscoie.com
**Perkins Coie LLP**
700 13th St., NW, Suite 800
Washington, DC 20005; Tel: 202-661-5882
*Admitted only in California*

Ryan B. Hawkins
Email: rhawkins@perkinscoie.com
**Perkins Coie LLP**
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080; Tel: 858/720-5709

*Attorneys for Defendant Cisco Systems, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the forgoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 30, 2024.

                                                                                                  */s/ Sarah E. Piepmeier*
                                                                                                  Sarah E. Piepmeier

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on June 5, 2024, pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service via the Court's CM/ECF system.

<i>/s/ Sarah E. Piepmeier</i><br>
Sarah E. Piepmeier